**In re Manford Dale MOSLANDER & Linda Jo Moslander, sometimes d/b/a Lindale Enterprises.**

**Bankruptcy No. 382–00647. Adv. No. 382–0296.**

United States Bankruptcy Court, C. D. Illinois.

Sept. 29, 1982.

Gregg N. Grimsley, Peoria, Ill., for Federal Deposit Ins. Corp.

Jerome F. Wolfson, Springfield, Ill., for Finance America.

### OPINION AND ORDER

BASIL H. COUTRAKON, Bankruptcy Judge.

This cause comes for hearing by the Federal Deposit Insurance Corporation (hereinafter, the F.D.I.C.) as receiver for the Farmers State Bank of Lewistown on a Complaint to Determine the Validity of a Lien claimed by Finance America on the proceeds realized from the sale of a boat by the debtor-in-possession.

Debtors Linda and Dale Moslander purchased a new 35-foot boat on June 30, 1977. Their new boat was financed as a purchase money transaction by Finance America who also filed a financing statement with the local County Recorder.

Later, on January 1, 1981, the Boat Registration and Safety Act (Ill.Rev.Stat.1981, ch. 95½, par. 311–1 et seq.) (hereinafter, the Boat Act) went into effect requiring owners of certain boats to register with the Illinois Department of Conservation (hereinafter, the Department) for a certificate of title.

> Every Owner of a motorboat, and sailboat over 12 feet in length, required to be numbered by this State and for which no certificate of title has been issued by the Department of Conservation shall make application to the Department of Conservation for a certificate of title either before or at the same time he next applies for issuance, transfer or renewal of a certificate of number. Ill.Rev.Stat.1981, ch. 95½, par. 313A–1(a).

The Boat Act also provides for the means of creating security interests. The owner must execute an application on the certificate of title.

> The owner shall immediately execute the application, in the space provided therefor on the certificate of title or on a separate form the Department of Conservation prescribes, to name the lienholder on the certificate, showing the name and address of the lienholder and the date of his security agreement, and cause the certificate, application and the required fee to be delivered to the lienholder. Ill.Rev. Stat., ch. 95½, par. 313B–3(a).

Thereafter the lienholder is to send the certificate of title to the Department.

> The lienholder shall immediately cause the certificate, application and the required fee to be mailed or delivered to the Department of Conservation. Ill.Rev. Stat., Ch. 95½, par. 313B–3(b).

The delivery of the certificate by the lienholder perfects the security interest.

> A security interest is perfected by the delivery to the Department of Conservation of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 21 days thereafter, otherwise as of the time of the delivery. Ill.Rev.Stat., ch. 95½, par. 313B–2(b).

With the new Boat Act this system of perfection of security interests has been made the exclusive procedure of perfection.

> The method provided in this Act of perfecting and giving notice of security interests subject to this Act is exclusive. Security interests subject to this Act are hereby exempted from the provisions of law which otherwise require or relate to the recording or filing of instruments creating or evidencing security interests in motorboats, or sailboats over 12 feet in length, including chattel mortgages and conditional sale agreements. Ill.Rev. Stat., ch. 95½, par. 313B–7.

The Illinois Commercial Code was also changed to accommodate the new system set up in the Boat Act.

> (3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to
>
> *    *    *    *    *    *
>
> (b) the following statutes of this State: "The Illinois Vehicle Code"; the "Boat Registration and Safety Act" . . . Ill.Rev. Stat.1981, ch. 26, par. 9–302(3)(b).

When the Boat Act went into effect at the beginning of 1981 the Moslanders did not execute an application on a certificate of title. Similarly Finance America did not take any action at that time to review their 1977 lien created under the Uniform Commercial Code. It was not until March 12, 1982 that the Moslanders applied for the required certificate of title. Yet they did not indicate that there were any liens on their boat. The space for liens on the Department's application was left blank.

A short time later on April 28, 1982 the Moslanders filed for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. sec. 1101 et seq. On their schedules, filed May 5, 1982, the Moslanders did indicate that Finance America had an undisputed lien on the boat.

The issue presented to this Court is whether or not the lien perfected in 1977 under the Uniform Commercial Code is still a valid perfected lien now that perfection by title is the exclusive method for boats in Illinois.

The principal unsecured creditor, the F.D. I.C. as successor in interest to the Farmers State Bank of Lewistown, contends that Finance America's lien is no longer perfected. Finance America contends that the Moslanders committed a deliberate fraud to drop the lien by not registering the name of the lienholder upon the application for certificate of title. A deliberate attempt to defraud should then result in the reformation of the certificate of title filed with the Department.

The Court cannot find sufficient evidence of a deliberate attempt to defraud Finance America by the omission of the lien on the certificate of title. In fact no evidence has been presented to the Court, by way of testimony or of affidavit, that would support anything more than negligence by the Moslanders. The fact that the Moslanders listed the lien to Finance America on their sworn schedules filed with this Court a few weeks after their application was filed with the Department hardly shows a scheme to defraud a creditor. On the other hand Finance America was not the most diligent of creditors in failing to review its lien during the sixteen months that the Boat Act was in effect before the Moslanders' Petition.

The Court wishes to rest its decision not on fraud but on the effect of the new Boat Act. Did the Boat Act abolish liens that were already perfected on the date of its enactment? The F.D.I.C. argues that the issue is more one of diligence in re-registering, not one of abolition of a prior right. By way of analogy the F.D.I.C. points to section 313B–2(c)(2) of the Boat Act (Ill. Rev.Stat.1981, ch. 95½, par. 313B–2(c)(2)). That section allows perfection to continue in Illinois from another jurisdiction by way of re-registering. In that section, if the foreign jurisdiction had a title system then re-registration is the only concern. There is no help, however, in that section if the foreign jurisdiction did not have a title system. Therefore the Court cannot take that section as dispositive of the issue at hand.

To defeat a perfected Illinois lien, a property right created in this state, the Court wants a strong, affirmative statement from the Illinois legislature. Nevertheless there is no definite statement from the Illinois legislature about what is to become of a prior perfected lien. Further, the Department has no rules or regulations on this issue. The Illinois Vehicle Code's Chapter on Certificate of Title (Ill.Rev.Stat.1981, ch. 95½, par. 3–100 et seq.) was the model for the Boat Act. Yet neither the Vehicle Code nor case law citing it has been helpful.

A close reading of the relevant sections of the Boat Act will show that an owner of an untitled boat need not apply for a certificate of title immediately in January, 1981, but by the time he next must apply for a certificate number (Ill.Rev.Stat.1981, ch. 95½, par. 313A–1 effective January 1, 1981) which is two years from a June 30 expiration date. (Ill.Rev.Stat.1981, ch. 95½, par. 313–9, effective September 22, 1969). Thus the legislature could not have intended to defeat U.C.C. perfected liens at the very enactment of the Boat Act if an owner were not even required to obtain a title on which a lien would be placed for perhaps one and one-half years after the enactment date.*

Also the section providing that the title system be the exclusive procedure (Ill.Rev. Stat.1981, ch. 95½, par. 313B–7) uses the present tense. There is no statement that prior filings are no longer valid. The clear implication of the present tense language is that any further perfecting and giving notice must be done according to the new terms.

The amendment to the U.C.C. merely said that the old method of filing "is not necessary or effective" for certain watercraft. It did not say that financing statements already filed were not effective but that the use of the procedure now is no longer effective. Ill.Rev.Stat.1981, ch. 26, par. 9–302(3)(b). This U.C.C. revision made no provision for defeating old liens or for refiling old liens. It could have. In fact when the U.C.C. was amended in 1972 a system of refilings was created in section 11–106 if a perfected lien were to be preserved. Ill. Rev.Stat.1981, ch. 26, par. 11–106.

As this Court can find no legislative intent to defeat U.C.C. perfected security interests it must then conclude that Finance America has a perfected security interest and is entitled to the proceeds of the sale of the boat to the extent of the debt.

---

* The Court understands that the Department did, however, notify owners of the necessity of a title well prior to the expiration of their certificate numbers. Nonetheless the fact remains that the legislature did not require that the necessary filings and fees for the new system be done until well after its commencement.